liDUFRESNE, Judge.
Charles Heintz, plaintiff-appellant, brings this appeal from a judgment dismissing his mandamus action against the City of Gretna in which he sought to compel the city to establish a municipal fire and police civil service. The trial judge determined that the two volunteer fire companies serving the city were independent contractors, and therefore that no civil service system needed to be *927 instituted. For the following reasons, we affirm the judgment.
The underlying facts concerning the plaintiff are not disputed. After 17 years on the Gretna police force, he was terminated. An internal investigation eventually approved of his dismissal, and he then requested a civil service hearing. The City denied this request, pointing out that no municipal civil service system for police and firemen existed. He thereupon brought the instant suit alleging that the City was required by La. Const. (1974), Art. 10, See. 16, and La. R.S. 33:2471, to institute such a system. Article 10, Sec. 1612provides:
A system of classified fire and police civil service is created and established. It shall apply to all municipalities haying a population exceeding thirteen thousand and operating a regularly paid fire and municipal police department and to all parishes and fire protection districts operating a regularly paid fire department.
La. R.S. 33:2471 states:
This Part applies to any municipality which operates a regularly paid fire and police department and which has a population of not less than thirteen thousand nor more than two hundred fifty thousand according to the latest regular census for which the official figures have been made public.
At trial of the matter, it was stipulated that the City of Gretna has a population of more than thirteen thousand, but less than two hundred fifty thousand. Both parties also apparently agreed that for the above provisions to apply, a municipality had to operate both a regularly paid fire department and a regularly paid police department. It was further agreed that the City does operate a regularly paid police department, leaving as the only contested issue whether the City “operates a regularly paid fire department.”
The evidence adduced at trial established that the City’s fire protection is provided by two volunteer fire departments: the David Crockett Steam Fire Company No. 1, and the Gould Steam Fire Company No. 2. Both of these organizations are non-profit corporations, and both have contracts with the City to provide fire protection for a fixed monthly fee. The Crockett Co. has, in turn, ten 18“ operators” and a secretary on its payroll, and the Gould Co. has seven “operators.” Although these people receive no direct payments from the City, it was shown that they do receive state supplemental pay for firemen. These “operators” man the various firehouses, maintain equipment, and drive and operate the fire trucks at fires. The Crockett Co. has about fifty active volunteer firefighters, and the Gould Co. about thirty. All of these members are trained and qualified under State standards, and none of them receive any payments for their services. Although both companies raise money through various fundraising functions, the bulk of their budgets comes from the City contract payments. It was acknowledged that at various times in the past the companies negotiated with the City for additional funds beyond the contracts’ prices to buy-major pieces of equipment.
There was also evidence relating to the dispatchers at the police department who receive and route all “911” calls, whether for police, fires, or emergency ambulance services. Deputy Police Chief Arthur Lawson, Jr. testified that the dispatchers are uniformed Gretna police Officers who are simply assigned to the communications center where they not only take emergency calls, but file reports, issue warrants, and do other paperwork. These officers are also available for patrol work and are regularly assigned to such duties. It was also established, however, that three of these officers are shown on the City’s books as being paid from funds generated by the fire protection millages, although the retirement portion of these salaries is paid into the police retirement fund.
|4On this showing, the trial judge determined that the two fire companies were inde- • pendent contractors, and therefore that the City was not operating a regularly paid fire department. She specifically found that the dispatchers were police employees, and that the “operators” were not firefighters, but were rather drivers who simply got the trucks to the fires. Plaintiff now appeals.
As a threshold matter, we address the question of whether the constitutional *928 provision and statute require that a civil service system be instituted by a municipality only when it operates both a regularly paid police department and a regularly paid fire department. We know of no jurisprudence addressing this precise question and the litigants have not brought any to our attention. In any case, it is our opinion that operation of both such departments is necessary before the above laws apply, and we so hold. In each, the reference is to any municipality which operates “a regularly paid fire and police department.” Thus, on their faces the enactments require that both a police and fire department be operated to trigger the requirement that a civil service system be instituted.
We are further persuaded that this interpretation of the above laws is correct by the debates on this point at the 1973 Constitutional Convention. At least four times the question was raised as to whether the provisions would apply to a municipality which had a paid police department and a volunteer fire department. On each occasion the delegates concluded that it would not. Records, Const. Convention (1973), Vol IX, pp. 2770, 2772, 2773, and 2778. Nowhere in these Isdiscussions is there any suggestion that a different understanding of the provision was entertained by any of the other delegates.
A second question, about which there is also no jurisprudence, is what exactly constitutes “operation of a regularly paid fire department.” As noted above, the convention delegates obviously recognized that volunteer fire departments were distinct from municipally run departments. In the present case, there is no doubt that the two departments are corporations formed and managed by groups of volunteers. In our opinion, these companies are “operated” by their membership, and not by the municipality of Gretna, and therefore the above provisions for civil service are inapplicable.
Plaintiff urges, to the contrary, that because the City pays these companies for fire protection the City is the ultimate “operator” of the companies. We, like the trial judge, reject this reasoning. The City has contracts with the companies which place the entire management of the fire departments in the hands of those organizations. The only employees of the companies, one secretary and some seventeen “operators,” are hired and paid by the companies, rather than the City. Although these people receive State supplemental pay, that fact is irrelevant to the relationship of the City to the companies. We also note that although the trial judge was probably wrong in finding that these people do not engage in “firefighting,” that fact is also irrelevant because they do not work for the City. The only people actually paid by the City who perform any tasks related to fire protection are the few police officers who are assigned to the communications center. | ¡¡While several of these people are shown on the City’s books as receiving funds from the fire millages, that accounting device is hardly sufficient to sustain the conclusion that they are members of a regularly paid fire department. Finally, the fact that the City has from time to time negotiated with the companies to assist them in purchasing major pieces of equipment which they could not have afforded given the contract prices does not establish that the City thereby became the operator of the companies.
We finally point out that the “operators” and the dispatchers would not be classified employees of a fire civil service, even were one established. Under La. R.S. 33:2481(B)(5), the “operators” would be excluded because they are not selected, appointed, supervised or subject to discharge by anyone in municipal government. Similarly, under 2481(B)(1), the dispatchers would not be considered classified employees of the fire civil service because routing of the “911” fire calls is not their principal duty, but only an incidental one.
Considering all of these circumstances, we must agree with the conclusion of the trial judge that the fire companies are independent contractors, that the City does not operate a regularly paid fire department, and therefore that the above laws relating to establishment of a police and fire civil service are not applicable.
For the foregoing reasons, the judgment of the district court is hereby affirmed.

AFFIRMED.